UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES ANDERSON MILLER,

    Plaintiff,

    v.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR), et al.,

    Defendants.

Case No. 16-cv-02431-EMC

**ORDER OF SERVICE**

Docket Nos. 3, 11, 15, 20

## I.   INTRODUCTION

Charles Anderson Miller, an inmate at the Correctional Treatment Facility in Soledad, commenced this action by filing a complaint in Monterey County Superior Court. Defendant Posson then removed the action to federal court because the complaint's claims for violations of Mr. Miller's rights under the U.S. Constitution presented a federal question. The complaint is now before the Court for review under 28 U.S.C. § 1915A. Mr. Miller's application for service of a summons and complaint on certain defendants, application for appointment of an orthopedic expert, and motion for a temporary restraining order also are now before the court.

## II.   BACKGROUND

The complaint in this action is a very longwinded document -- 58 pages of single-spaced typing -- that provides an excessively detailed narrative of medical care providers' responses to Mr. Miller's knee problems for the last seven years. The narrative begins in 2009, and provides about 15+ pages (single-spaced) of background material that could be summarized in a short paragraph, such as is provided in the next paragraph below. Notwithstanding the wordiness of it, the complaint does state some claims for relief. The complaint alleges the following:

Mr. Miller hurt his right knee during a fall on March 29, 2009 when he was at an outside hospital for care for an unrelated problem. Docket No. 1-2 at 11. He thereafter had knee pain and eventually had arthroscopic knee surgery on August 9, 2012. *Id.* at 15. After the surgery, he continued to have knee pain. Doctors at the California State Prison at Corcoran, where Mr. Miller was then housed, eventually recommended a total knee replacement (TKR) surgery for Mr. Miller.[1] *Id.* at 16-17. Dr. Moon informed Mr. Miller that Mr. Miller would receive TKR surgery as soon as it could be scheduled, and submitted a request for services (RFS) to begin the process for final approval of the TKR surgery. *Id.* at 18. On June 10, 2014, Dr. Beregovskaya, on behalf of Dr. Moon, allegedly completed a RFS for a TKR surgery by Dr. Alade that was approved at Corcoran on or about June 12 or 17, 2014. That form allegedly was emailed to the Utilization Management Registered Nurse (UMRN) at the Correctional Training Facility-Soledad. *Id.*

As the RFS was being processed at Corcoran, Mr. Miller was being transferred to the Correctional Training Facility in Soledad (CTF-Soledad). Mr. Miller left Corcoran on June 10, 2014, and arrived at CTF-Soledad on June 12, 2014. *Id.* at 18. Although Mr. Miller's TKR surgery had been approved at Corcoran, the UMRN at CTF-Soledad took the form to Dr. Darrin Bright, who determined not to provide the surgery. *Id.* at 19.[2] Dr. Bright, the UMRN, Dr. Beregovskaya and Dr. Zahed Ahmed then allegedly falsified and fabricated medical records to show that the RFS had been denied. *Id.*

---

[1] In various documents and in different places in Mr. Miller's complaint, the surgery is referred to by different names, e.g., total knee replacement, total joint replacement, and total knee arthroscopy. For sake of clarity, the surgery will be referred to as TKR surgery throughout this order.

[2] By citing to a particular page in the complaint on which information may be found, the Court does not suggest that the cited page is the only place in the complaint on which allegations relating to the claim may be found. For example, there are allegations about the inadequacies of the care provided by Dr. Ahmed throughout the complaint.

Mr. Miller has represented that this action only "concerns events having taken place since June 4, 2014." Docket No. 15 at 2; *see also* Docket No. 1-2 at 43-59 (identifying the dates of the events and omissions giving rise to the causes of actions as occurring in June 2014 and later). The allegations about the events and omission on and after June 4, 2014 start at about paragraph 37 of the complaint. Defendants must address all the allegations against each of the defendants, starting with the allegations in paragraph 37 of the complaint.

Dr. Ahmed failed and refused to cause the TKR surgery to be done for Mr. Miller. Dr. Bright and Dr. Posson also failed and refused to approve the TKR surgery for Mr. Miller.

Dr. Ahmed improperly tapered Mr. Miller off MS Contin, an opioid pain medication, and failed to prescribe adequate medications to address Mr. Miller's withdrawal symptoms. Dr. Ahmed also later failed to provide an adequate replacement pain medication. *See id.* at 26-30. Dr. Bright and Dr. Posson also made decisions that caused Mr. Miller to be taken off the MS Contin. *Id.* at 28.

Nurse Robert Deluna and nurse N. Knight did not obtain help for Mr. Miller's complaints of increased pain and drug withdrawal symptoms in April 2015. *Id.* at 29-30. Later, in August 2015, nurse Deluna told Mr. Miller that he "didn't want to have anything to do with [Mr. Miller] and all of [his] 602's" and that nurse Deluna didn't want to see Mr. Miller again unless he was having a cardiac arrest. *Id.* at 41.

Dr. Ahmed prescribed carbamazepine (also known as Tegretol) for pain, after Mr. Miller had informed his healthcare providers that he would not give informed consent for them to "prescribe antidepressants, antiseizure/anticonvulsant, and/or anti-psychotic/psychoactive drugs for 'off label' use to treat plaintiff's right knee pain." *Id.* at 33. Dr. Ahmed told Mr. Miller that carbamazepine was not such a drug and would have no appreciable side effects. *Id.* The drug is approved as an anticonvulsant, and Dr. Ahmed fraudulently induced Mr. Miller to take it by failing to disclose that the drug was an anticonvulsant. *Id.* Mr. Miller had chest pains and irregular heartbeat shortly after taking carbamazepine for the first time, and decided to never take it again. *Id.* at 33-34. When Mr. Miller wrote a letter of complaint to the doctors at the prison about the prescription of carbamazepine, his prescription was cancelled. *Id.* at 34. Nurse Knight made comments to the effect that Mr. Miller was creating problems by complaining so much and things would get worse if he continued to file inmate appeals and requests for service. *Id* at 34.

Dr. Schultz prepared a radiology report dated January 22, 2015, which was not "wholly incorrect," but "almost certainly fashioned/created to omit the facts contained in the actual 12/10/2013 radiology report by Dr. Laufik." *Id.* at 23-24.

Dr. Troup allegedly fabricated a report for x-rays that were ordered but not actually done

on April 30, 2015. *Id.* at 32.

Mr. Miller was sent to Dr. Williams for a consultation as to the appropriate care for his knee. *Id.* at 39. Dr. Williams saw Mr. Miller via a telemedicine link on July 30, 2015, and wrote a report the next day that had several inaccuracies. Dr. Williams opined that a TKR surgery was unnecessary because Mr. Miller had not exhausted all conservative treatment options, recommended physical therapy and a steroid injection, and directed that Mr. Miller be returned to him in 3-4 months. *Id*. at 40. The return visit did not occur.

Dr. Ahmed then prepared an RFS for steroid injections for Mr. Miller's right knee but did not order physical therapy. Dr. Ahmed stated that he did not order physical therapy because all the physical therapists had done nothing but talk to Mr. Miller instead of providing hands-on therapy. *Id.* at 41. Mr. Miller received the steroid injection on September 2, 2015. *Id.* at 42.

To date, Mr. Miller apparently has not received the TKR surgery he wants.

### III.   DISCUSSION

A.   Review of Complaint

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the Court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

1.   Claims Under Federal Law (Third and Seventh Causes of Action)

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). (Section 1988 of Title 42 of the United States Code, also cited by Mr. Miller, does not provide a substantive cause of action; it allows for attorney's fees.)

Eighth Amendment: The Eighth Amendment's prohibition of cruel and unusual

4

punishment requires that prison officials take reasonable measures for the safety and health of inmates. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety or health. *See id.* at 834. Liberally construed, the seventh cause of action of the *pro se* complaint states cognizable claims against the following defendants for deliberate indifference to Mr. Miller's allegedly serious medical needs for a TKR surgery and adequate pain medication: Dr. Ahmed, Dr. Bright, Dr. Posson, Dr. Williams, and Doe # 1 (a/k/a the UMRN). Giving the complaint the liberal construction to which it is entitled, the complaint states a cognizable claim against Dr. Troup and Dr. Schultz, who allegedly created false or misleading x-ray reports used to support the denial of a TKR surgery.

Retaliation: An inmate has a First Amendment right to file grievances against prison officials without being subjected to retaliation in response thereto. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Liberally construed, the third cause of action of the *pro se* complaint states a cognizable claim against Dr. Ahmed, Dr. Bright, Dr. Posson, nurse Deluna, and nurse Knight for retaliation, as they allegedly denied him proper medical care because of Mr. Miller's extensive complaining and grievance-filing activity.

A claim is not stated against Dr. Williams for retaliation, as his activity was limited to allegedly providing a telemedicine consultation in response to Mr. Miller's many inmate appeals and extensive disagreement with the medical care he was being provided. While Dr. Williams' acts followed Mr. Miller's First Amendment activity, in that Dr. Williams was tasked with evaluating Mr. Miller due to the latter's inmate appeals, merely making a decision adverse to a prisoner is not inherently retaliatory. Retaliation has a collateral nature that Mr. Miller's approach

5

ignores as he attempts to label as retaliatory everything other than prompt, cheerful and agreeable responses to his apparently numerous requests.

Fourteenth Amendment: Many of the allegations in the complaint pertain to the handling of Mr. Miller's inmate appeals. Any mishandling or failure to grant Mr. Miller's inmate appeals in the prison administrative appeal system does not amount to a due process violation. There is no federal constitutional right to a prison administrative appeal or grievance system for California inmates. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause); *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993). Prison officials are not liable for a due process violation for simply failing to process an appeal properly or failing to find in Mr. Miller's favor. The claim alleged under the Fourteenth Amendment is dismissed without leave to amend.

2.   Claims Under State Law

Statutory negligence: Under California Government Code § 845.6, "a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Liberally construed, the first cause of action of the *pro se* complaint states a claim for relief against the CDCR, Dr. Ahmed, Dr. Bright, Dr. Posson, and Doe # 1 (aka UMRN) under California Government Code § 845.6 based on their failure to obtain a TKR surgery for Mr. Miller. Liberally construed the second cause of action of the *pro se* complaint states a claim for relief against the CDCR, nurse Knight and nurse Deluna under California Government Code § 845.6 based on their failure to obtain care for Mr. Miller's opioid withdrawal pain and symptoms.

Negligence: Under California law, "[t]he elements of a cause of action for negligence are well established. They are (a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (Cal. 1996) (citations and internal quotation marks omitted).

6

Liberally construed, the fifth cause of action of the *pro se* complaint states a claim for relief against Dr. Ahmed, Dr. Bright, Dr. Posson, Mr. Beregovskaya and Doe # 1 (a/k/a UMRN) for professional negligence in their response to Mr. Miller's need for TKR surgery and pain medication.

California Civil Code § 52.1:  The Bane Act, codified at California Civil Code § 52.1, makes it unlawful for any person to "interfere[] by threats, intimidation, or coercion, or attempt[] to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Liberally construed, the third cause of action of the *pro se* complaint states a cognizable claim for relief for a violation of California Civil Code § 52.1 against the following defendants for interfering with Mr. Miller's constitutional right to petition the government for redress of grievances: Dr. Ahmed, Dr. Bright. Dr. Posson, nurse Deluna, and nurse Knight.  A claim is not stated against Dr. Williams, as his activity was limited to providing a telemedicine consultation in response to Mr. Miller's many inmate appeals and extensive disagreement with the medical care he was being provided.

Intentional Infliction Of Mental Distress:  The tort of intentional infliction of mental distress has these elements: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (Cal. 1991). To be "outrageous," conduct must "be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.*  Giving the *pro se* complaint the liberal construction to which it is entitled, the Court is constrained to find that the complaint appears to state a cognizable claim against Dr. Ahmed, Dr. Bright, Dr. Posson, nurse Knight, and nurse Deluna for intentional infliction of mental distress in their handling of his requests for TKR surgery and adequate pain medications.

Breach of Fiduciary Duty:  In California, the "doctor-patient relationship is a fiduciary one and as a consequences of the physician's 'fiducial' obligations, the physician is prohibited from

1  misrepresenting the nature of the patient's medical condition." *Hahn v. Mirda*, 147 Cal.App.4th
2  740, 748 (Cal. Ct. Ap. 2007).  Liberally construed, the sixth cause of action in the *pro se*
3  complaint states a cognizable claim for a breach of fiduciary duty by Dr. Ahmed, who allegedly
4  prescribed a pain medication, carbamazepine, that was in a class of medications Mr. Miller
5  specifically refused to consent to take.

B.   Miscellaneous Motions

Screening the complaint:  Defendants' request for the Court to screen the complaint is **GRANTED**.  (Docket No. 3.)  This order does the screening under 28 U.S.C. § 1915A of the prisoner-plaintiff's complaint.

Medical expert:  Mr. Miller requests the Court to appoint an independent orthopedic surgeon as a medical expert. (Docket No. 15.)  Mr. Miller states that he is not asking for the Court to appoint an expert for him, but only for an expert to help the Court evaluate his case and factual allegations.  He also urges that Defendants should pay the entire cost.  Docket No. 15 at 7-8. Federal Rule of Evidence 706 allows the court to appoint an expert, but the Court does not believe appointment of an expert is necessary or appropriate in this case.  The Court does not need an independent expert to aid the court's understanding of the legal claims alleged in this medical care case.  It is up to the parties to present appropriate evidence, including their own experts if necessary, to prove their claims.  Further, in a civil rights action such as this, Rule 706(b) contemplates that the expert would be paid by the parties, but here Defendants would have to bear the entire cost because Mr. Miller apparently is indigent.  There is no showing that it is appropriate or fair to require Defendants to bear the sole burden of paying an expert witness to present what Mr. Miller hopes will be a view consistent with Mr. Miller's own point of view.  The request for appointment of an independent orthopedic surgeon as a medical expert is **DENIED**.  (Docket No. 15.)  This ruling in no way precludes Mr. Miller from hiring and paying his own expert witness.

Service on unserved defendants:  Mr. Miller's request for service of process on Dr. Schultz, Dr. Troup and nurse Knight is **GRANTED**. (Docket No. 11.)  Having found that claims for relief were stated against these defendants, service of process will be ordered on them.

TRO request:  A temporary restraining order preserves the status quo and prevents

8

irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). A temporary restraining order is an "extraordinary remedy" that the court should award only when a plaintiff makes a clear showing that he is entitled to such relief. *See Winter v. Natural Res. Defense Council, Inc*., 555 U.S. 7, 24 (2008). The standards for a temporary restraining order mirror that for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that would result if an injunction were not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *See Winter*, 555 U.S. at 20.[3] The irreparable injury must be both likely and immediate. *See id*. at 22; *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.")

Mr. Miller has filed a request for a temporary restraining order (TRO) to compel defendants (a) not to transfer him and (b) to arrange the TKR surgery Mr. Miller wants. He is not entitled to a TRO on either point.

Mr. Miller's contention that he should remain at CTF-Soledad so that he does not suffer further delay in surgery due to a transfer rings hollow in light of the theme of his complaint that doctors at CTF-Soledad -- the chief medical executive, the chief physician and surgeon, and his primary care provider -- have steadfastly refused to provide him with the surgery he wants. Mr. Miller also has not shown that his transfer to another prison is imminent. The memorandum from his most recent classification committee hearing on May 18, 2016, does not show that he is soon

---

[3] *Winter* did not, however, completely reject the validity of the sliding scale approach to preliminary injunctions. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). Under the "sliding scale" approach used in the Ninth Circuit – also dubbed the "serious question" test in *Alliance for Wild Rockies* -- "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. Thus, even after *Winter*, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132 (citations omitted).

1   to be transferred.  *See* Docket No. 23 at 70.  Moreover, even if Mr. Miller is transferred, effective

2   injunctive relief could be ordered if he prevails because at least one of the defendants (CDCR)

3   apparently would have statewide authority to provide the requested surgery.  Mr. Miller's request

4   for a TRO to keep him at CTF-Soledad fails because he does not "demonstrate irreparable injury is

5   *likely* in the absence of" interim relief.  *Winter*, 555 U.S. at 22.  He provides no *evidence* that any

6   defendant has threatened or taken steps to transfer him and instead speaks in generalities and relies

7   on unpersuasive prison scuttlebutt about medical care to try to make his point that he might be

8   transferred.  And, he provides no evidence that a transfer would cause him irreparable injury.

9         As to the request for a TRO compelling defendants to arrange a TKR surgery, Mr. Miller

10  has not met the high standard necessary to obtain the extraordinary relief he now seeks.  When, as

11  here, the party seeks interim relief that requires a defendant to take affirmative action (as opposed

12  to refrain from taking action), the movant's burden "is doubly demanding," and he "must establish

13  that the law and facts *clearly favor* [his] position, not simply that [he] is likely to succeed" on the

14  merits.  *Garcia v. Google, Inc.*, 786 F.3d 733, 741 (9th Cir. 2015).  In essence, Mr. Miller wants

15  his surgery now, and to litigate his entitlement to it later.  But that will not happen because, on the

16  record now before the court, it cannot be said that he has demonstrated a likelihood of success on

17  the merits, let alone that the law and facts clearly favor his position.  The allegations of the

18  complaint and the attachments thereto show a sharp difference of opinion between Mr. Miller and

19  the defendant-doctors at CTF-Soledad as to whether TKR surgery is necessary at this time.  The

20  defendant-doctors apparently are of the view that his knee problem is not severe enough to warrant

21  TKR surgery, and that other more conservative methods should be pursued.  To prevail on an

22  Eighth Amendment "claim involving choices between alternative courses of treatment, [an inmate]

23  must show that the chosen course of treatment 'was medically unacceptable under the

24  circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the inmate's]

25  health.'"  *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).  The evidence now in the record

26  does not show a likelihood of success for Mr. Miller in showing that the decisions made by the

27  defendants to deny him TKR surgery were done with deliberate indifference to Mr. Miller's

28  serious medical needs.  Further, under state law, a plaintiff alleging professional negligence by a

doctor must support his claim with expert medical evidence, which Mr. Miller has not yet done. *See Landeros v. Flood*, 17 Cal. 3d 399, 410 (Cal. 1976) (citation omitted) ("'The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circumstances is within the common knowledge of the layman.'"); *Bromme v. Pavitt*, 5 Cal. App. 4th 1487, 1498 (Cal. Ct. App. 1992) ("in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony"). For these reasons, Mr. Miller's request for a temporary restraining order is **DENIED**. (Docket No. 20.)

C.   Filings and Procedural Rules

Finally, the Court notes that numerous filings from Mr. Miller have been unnecessarily long-winded (e.g., the 58-page single spaced complaint, the 7-page single spaced declaration in support of the application for appointment of an expert, and the 8-paged application for appointment of an expert (which was in addition to the 11-page memorandum of points and authorities in support of that application)). In the future, Mr. Miller should attempt to be more concise in his filings. A memorandum of points and authorities should contain all his legal arguments, but should not be bulked up with unnecessary and irrelevant argument. Any declaration he submits should not include legal argument and should only contain statements of facts of which he has personal knowledge.

Plaintiff must comply with the following rules about formatting and scheduling. First, any motion, legal brief or declaration he files may have text on only one side of a page, must be double-spaced with no more than 28 lines per page (except that quotations may be single-spaced), and any typewritten text must be at least 12-point type. *See* N.D. Cal. Local Rule 3-4(c). Second, for any motion, the motion-- including the notice of motion as well as the legal argument (also known as the points and authorities) in support of the motion -- may not exceed 25 pages in length. N.D. Cal. Local Rule 7-2. Any opposition brief or memorandum of points and authorities may not exceed 25 pages of text, and any reply may not exceed 15 pages to text. N. D. Cal. Local Rule 7-3. After the reply is filed, no further argument, briefing or evidence may be submitted. All

1 motions will be decided on the papers without oral argument unless the Court specifically orders
2 otherwise.

### IV. CONCLUSION

1. The complaints states cognizable claims against the defendants under federal and state law as stated in Section A of the Discussion section, above. All of the defendants except Dr. Schultz, Dr. Troup and nurse Knight have been served and appeared in this action.

2. The Clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the first amended complaint and a copy of all the documents in the case file upon the following three defendants:

    (1)    Christopher Schultz, M.D.
            Radiology group
            Queen of the Valley Hospital
            1000 Trancas Street
            Napa, CA 94558

    (2)    B. Troup, M.D.
            Radiology group
            Queen of the Valley Hospital
            1000 Trancas Street
            Napa, CA 94558

    (3)    N. Knight, R.N.
            c/o Management Solution, LLC
            200 Pine Avenue, Suite 300
            Long Beach, CA 90815

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

    a. No later than **August 26, 2016**, Defendants must file and serve a motion for summary judgment or other dispositive motion. If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due. If Defendants file a motion for summary judgment, Defendants must provide to Plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012). If Defendants file a motion to dismiss for non-exhaustion of administrative remedies, Defendants must provide to Plaintiff a notice regarding motions to dismiss for non-exhaustion procedures at the time they file such a

1  motion. *See Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012).

2        b.      Plaintiff's opposition to the summary judgment or other dispositive motion
3  must be filed with the Court and served upon Defendants no later than **September 23, 2016**.
4  Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in
5  this order as he prepares his opposition to any motion for summary judgment. Plaintiff also must
6  bear in mind the notice and warning regarding motions to dismiss for non-exhaustion provided
7  later in this order as he prepares his opposition to any motion to dismiss. Plaintiff also is
8  cautioned that he must comply with the Court's page limitations, i.e., his opposition brief may not
9  exceed 25 pages in length.

10        c.      If Defendants wish to file a reply brief, the reply brief must be filed and
11  served no later than **October 7, 2016**.

12      4.    Plaintiff is provided the following notices and warnings about the procedures for
13  motions for summary judgment and motions to dismiss for non-exhaustion of administrative
14  remedies:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

26  The defendants may file a motion to dismiss for failure to exhaust administrative remedies
27  instead of, or in addition to, a motion for summary judgment. A motion to dismiss for failure to
28  exhaust administrative remedies is similar to a motion for summary judgment in that the court will

1    consider materials beyond the pleadings. You have the right to present any evidence you may have
2    which tends to show that you did exhaust your administrative remedies or were excused from
3    doing so.  The evidence may be in the form of declarations (that is, statements of fact signed under
4    penalty of perjury) or authenticated documents (that is, documents accompanied by a declaration
5    showing where they came from and why they are authentic), or discovery documents such as
6    answers to interrogatories or depositions.  In considering a motion to dismiss for failure to
7    exhaust, the court can decide disputed issues of fact with regard to this portion of the case.  If
8    defendants file a motion to dismiss and it is granted, your case will be dismissed and there will be
9    no trial. *See generally Stratton v. Buck*, 697 F.3d at 1008.

10       5.   All communications by Plaintiff with the Court must be served on a Defendant's
11   counsel by mailing a true copy of the document to the Defendant's counsel.  The Court may
12   disregard any document which a party files but fails to send a copy of to his opponent.  Until a
13   Defendant's counsel has been designated, Plaintiff may mail a true copy of the document directly
14   to the Defendant, but once a Defendant is represented by counsel, all documents must be mailed to
15   counsel rather than directly to that Defendant.

16       6.   Discovery may be taken in accordance with the Federal Rules of Civil Procedure.
17   No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required
18   before the parties may conduct discovery.

19       7.   Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the
20   Court informed of any change of address and must comply with the Court's orders in a timely
21   fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant
22   to Federal Rule of Civil Procedure 41(b).  Plaintiff must file a notice of change of address in every
23   pending case every time he is moved to a new facility.

24       8.   Plaintiff is cautioned that he must include the case name and case number for this
25   case on any document he submits to the Court for consideration in this case.

26       9.   Defendants' motion to screen the complaint is **GRANTED**.  Docket No. 3.
27   Plaintiff's request for service of process on three unserved defendants is **GRANTED**. (Docket No.
28   11.) Plaintiff's request for appointment of an independent expert and for a temporary restraining

14

order are **DENIED**. (Docket Nos. 15, 20.)

10. Plaintiff must provide a name for the defendant he refers to as "UMRN" and alternatively as Doe # 1 no later than **August 26, 2016,** so that s/he may be served with process. Failure to provide the true name and address of that person by that date will result in the dismissal of that defendant.

**IT IS SO ORDERED**.

Dated: June 22, 2016

_____
EDWARD M. CHEN
United States District Judge

15